UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

INSPIRA HEALTH NETWORK,

      Plaintiff,

v.

AMERICAN GUARANTEE AND
LIABILITY INSURANCE COMPANY,

      Defendant.

No. 1:21-cv-11124

OPINION

**APPEARANCES**:

Ellis I. Medoway
ARCHER & GREINER, PC
One Centennial Square
Haddonfield, NJ 08033

Trevor J. Cooney
ARCHER & GREINER, PC
1025 Laurel Oak Rd.
Voorhees, NJ 08043

    *On behalf of Plaintiff.*

Charles Andrew Booth, Sr
John Albert Mattoon , Jr.
FORD MARRIN ESPOSITO WITMEYER & GLESER, LLP
Wall Street Plaza, 16th Floor
New York, NY 10005-1875

    *On behalf of Defendant.*

**O'HEARN, District Judge.**

## INTRODUCTION

This matter comes before the Court on Plaintiff Inspira Health Network's ("Plaintiff") Motion to Remand. (ECF No. 11). The Court did not hear oral argument pursuant to Local Rule 78.1. For the reasons that follow, Plaintiff's Motion is **DENIED**.

## I.     BACKGROUND

Plaintiff is one of Southern New Jersey's "leading network[s] of healthcare providers, delivering the full continuum of primary, acute and advanced care services." (Compl., ECF No. 1-1, ¶ 5). Its system comprises "three hospitals, two comprehensive cancer centers, several multi-specialty health centers and a total of more than 150 access points" throughout Gloucester, Cumberland, Salem, Camden, and Atlantic counties. (ECF No. 1-1, ¶ 5). It employs approximately 7,500 people across its facilities. (ECF No. 1-1, ¶ 7). Among the various healthcare services Plaintiff provides are elective surgical and invasive procedures. (ECF No. 1-1, ¶ 6).

Defendant American Guarantee and Liability Insurance Company ("Defendant") is an insurance company organized under the laws of New York with its principal place of business in Illinois. (Notice of Removal, ECF No. 1, ¶ 5).

Plaintiff contracted with Defendant for business insurance coverage under Defendant's "Zurich EDGE Healthcare" plan, securing a policy effective January 1, 2020, through January 1, 2021 ("the Policy"). (Compl., ECF No. 1-1, ¶ 8; Exhibit A to Compl., ECF No. 1-1). Among other terms, the Policy includes "special coverage" for business "interruption by communicable disease," ("ICD Term"). (Compl., ECF No. 1-1). In relevant part, the ICD Term provides:

> The Company will pay for the actual Gross Earnings loss sustained by the Insured, as provided by this Policy, resulting from the necessary Suspension of the Insured's business activities at an Insured Location if the Suspension is caused by order of an authorized governmental agency enforcing any law or ordinance regulating

> communicable diseases and that such portions of the location are declared uninhabitable due to the threat of the spread of communicable disease, prohibiting access to those portions of the Location.
>
> . . . .
>
> This Coverage will only apply when the period of time that access is prohibited exceeds the time shown as Qualifying Period in the Qualifying Period clause of the Declarations section. If the Qualifying Period is exceeded, then this Policy will pay for the amount of loss in excess of the Policy Deductible, but not to exceed the number of consecutive days following such order as stated in the Declarations up to the limit applying to this Coverage.
>
> This Coverage will not apply to loss or damage that is payable under any other provision in this Policy.

(Compl., ECF No. 1-1, ¶ 26; Exhibit A to Compl., ECF No. 1-1). The Policy defines "Suspension" as "[t]he slowdown or cessation of the Insured's business activities," and "Qualifying Period" as "[t]he continuous period of time expressed in hours or days which must be exceeded before coverage under this Policy begins," which for purposes of the ICD Term is twenty-four hours. (ECF No. 1-1, ¶¶ 27–29). The Policy further provides a sub-limit for coverage under the ICD Term of $1 million. (ECF No. 1-1, ¶ 11).

As all are undoubtedly aware, the COVID-19 global pandemic began sweeping the United States, including New Jersey, in early 2020, leading to still-increasing numbers of infections and deaths. (ECF No. 1-1, ¶¶ 34–44). In response to the crisis, New Jersey Governor Phil Murphy issued Executive Order No. 103, which provided:

> I authorize and empower the State Director of Emergency Management, who is the Superintendent of State Police, in conjunction with the Commissioner of DOH, to take any such emergency measures as the State Director may determine necessary, including the implementation of the State Emergency Operations Plan and directing the activation of county and municipal emergency operations plans, in order to fully and adequately protect the health, safety and welfare of the citizens of the State of New Jersey from any actual or potential threat or danger that may exist from the possible exposure to COVID-19.

(ECF No. 1-1, ¶ 45). After the World Health Organization also designated COVID-19 as a global pandemic and the President of the United Stated declared it a national emergency, (ECF No. 1-1,

3

¶¶ 46–47), Governor Murphy issued a series of further orders aimed at stopping the spread of the disease. (ECF No. 1-1, ¶¶ 48–49). One such order, Executive Order No. 107, required "[t]he brick-and-mortar premises of all non-essential retail businesses must close to the public as long as this Order remains in effect." (ECF No. 1-1, ¶¶ 48–49). Another, and most relevant here, Executive Order No. 109, suspended all elective surgeries and invasive procedures performed on adults in the state:

> Beginning at 5:00 p.m. on Friday, March 27, 2020, all "elective" surgeries performed on adults, whether medical or dental, and all "elective" invasive procedures performed on adults, whether medical or dental, are suspended in the State. An "elective" surgery or invasive procedure, for purposes of this order, is defined as any surgery or invasive procedure that can be delayed without undue risk to the current or future health of the patient as determined by the patient's treating physician or dentist. An "elective" surgery or invasive procedure does not include the administration of vaccines.

(ECF No. 1-1, ¶ 51). In compliance with this Order, Plaintiff ceased all elective procedures at the appointed time. (ECF No. 1-1, ¶ 56). This work did not resume until May 26, 2020. (ECF No. 1-1, ¶ 59).

During this interruption, Plaintiff alleges that it endured a significant loss of gross earnings: more than $20 million. (ECF No. 1-1, ¶ 63). Accordingly, Plaintiff filed a claim with Defendant on April 14, 2020, seeking coverage under the Policy's ICD Term. (ECF No. 1-1, ¶ 67). In a May 5, 2020 letter, Defendant stated that it needed time to investigate Plaintiff's claim. (ECF No. 1-1, ¶ 68). On March 8, 2021, Defendant communicated via e-mail that it would deny coverage. (ECF No. 1-1, ¶ 70). Plaintiff responded by filing suit. (ECF No. 1-1).

II.     **PROCEDURAL HISTORY**

On March 30, 2021, Plaintiff commenced this action in the Superior Court of New Jersey, Gloucester County, seeking a declaratory judgment that Defendant must cover Plaintiff's losses up to $1 million as contemplated by the ICD Term of the Policy. (Compl., ECF No. 1-1). The New

4

Jersey Department of Banking and Insurance accepted service on Defendant's behalf on April 12, 2021. (Notice of Removal, ECF No. 1, ¶ 3). Defendant then timely removed the case to this Court on May 12, 2021, under 28 U.S.C. §§ 1441 and 1446, invoking this Court's diversity jurisdiction under 28 U.S.C. § 1332. (Notice of Removal, ECF No. 1).

After the grant of a series of extensions of time for Defendant to respond to Plaintiff's Complaint (ECF Nos. 4, 6), the parties submitted a joint request for a sixty-day stay of proceedings in this matter on June 8, 2021, to explore settlement. (ECF No. 9). The parties also requested that if the Court granted the stay, it should still allow the filing of a Motion for Remand that Plaintiff intended to submit in the days to follow. (ECF No. 9). The Court granted both requests on June 9, 2021, (ECF No. 10), and the present Motion to Remand was filed the next day, (ECF No. 11).

After the parties were unable to resolve this matter within the original sixty-day stay of proceedings, the Court granted a series of extensions. (ECF Nos. 21, 23, 26). Unfortunately, the parties remained unable to come to an agreement, and the matter returned to active status on February 4, 2022. (ECF No. 28). Defendant then filed a Response to the present Motion (ECF No. 29), to which Plaintiff replied, (ECF No. 30).

### III.  LEGAL STANDARD

Under 28 U.S.C. § 1441, a defendant may remove "any civil action brought in a State court of which the district courts of the United States have original jurisdiction" to the federal district court "embracing the place where such action is pending." However, the district court may remand the proceeding to the appropriate state court on a plaintiff's motion filed within thirty days of the defendant's notice of removal, or at any time before a final judgment if the court determines it lacks subject matter jurisdiction. *Id.* § 1447(c). And even in properly-removed cases in which they have subject-matter jurisdiction, district courts can, in certain circumstances, decline in their

discretion to exercise jurisdiction and remand when the plaintiff seeks only declaratory relief. *Reifer v. Westport Ins. Corp.*, 751 F.3d 129, 134–37 (3d Cir. 2014) (citing *Brillhart v. Excess Ins. Co. of Am.*, 316 U.S. 491, 494 (1942)); 28 U.S.C. § 2201(a) (granting discretionary, not mandatory jurisdiction over declaratory judgment actions).

When considering whether to retain jurisdiction over a removed declaratory judgment action, courts must first determine whether there is a "parallel state proceeding," because "the absence of pending parallel state proceedings militates significantly in favor of exercising jurisdiction, although it alone does not require such an exercise." *Id.* at 144. A parallel state proceeding in this context "is a pending matter involving the same parties and presenting the opportunity for ventilation of the same state law issues." *Kelly v. Macum Specialty Ins. Grp.*, 868 F.3d 274, 284 (3d Cir. 2017) (quotation and alteration omitted).

Even if there is no parallel state proceeding pending, however, a district court may still decline to exercise jurisdiction after a "rigorous" analysis of factors that ultimately weigh against such an exercise. *Reifer*, 751 F.3d at 144. The Third Circuit has promulgated the following, non-exhaustive list of factors to guide that analysis:

> (1) the likelihood that a federal court declaration will resolve the uncertainty of obligation which gave rise to the controversy;
> (2) the convenience of the parties;
> (3) the public interest in settlement of the uncertainty of obligation;
> (4) the availability and relative convenience of other remedies;
> (5) a general policy of restraint when the same issues are pending in a state court;
> (6) avoidance of duplicative litigation;
> (7) prevention of the use of the declaratory action as a method of procedural fencing or as a means to provide another forum in a race for *res judicata*; and
> (8) (in the insurance context), an inherent conflict of interest between an insurer's duty to defend in a state court and its attempt to characterize that suit in federal court as falling within the scope of a policy exclusion.

*Id.* at 146.

While courts should give "meaningful consideration" to all of these factors, some may prove more relevant and weigh heavier in certain circumstances. *Id.* In the context of insurance coverage specifically, "the fifth, sixth, and eighth factors are 'particularly relevant,' to the extent applicable, based on the facts of a particular case." *Mattdogg*, 2020 WL 6111038, at *4 (quoting *Ewart v. State Farm Mut. Auto. Ins. Co.*, 257 F. Supp. 3d 722, 725 (E.D. Pa. 2017)). When these factors outweigh the lack of a parallel proceeding, the court may decline jurisdiction and remand the action. *Reifer*, 751 F.3d at 144.

## IV. DISCUSSION

Plaintiff has moved to remand this action to the Superior of New Jersey, Gloucester County, on the grounds that while this Court has subject-matter jurisdiction and there is admittedly no pending state court proceeding, a weighing of the *Reifer* factors favors remand. (Pla.'s Br., ECF No. 11-1 at 8). Under that analysis, the parties appear to agree that all but the third and fifth *Reifer* factors are at best neutral.[1] (Pla.'s Br., ECF No. 11-1 at 9; Def.'s Br., ECF No. 29 at 6, 14, 17). After careful consideration of the remaining two factors[2] guided by recent Third Circuit precedent,

---

[1] While Defendant seems to agree that these six factors are neutral, it attempts to reframe the *Reifer* factor-weighing analysis into one in which Plaintiff must rebut a "presumption" of this Court's retained jurisdiction. (Def.'s Br., ECF No. 29 at 3–4). The Court does not agree with Defendant's interpretation of the controlling precedent. *Reifer* and its progeny, *see, e.g., DiAnioa's Eatery, LLC v. Motorists Mut. Ins. Co.*, 10 F.4th 192, 196–97 (3d Cir. 2021), make clear that the *Reifer* factors guide courts in their exercise of discretion regarding the retention of jurisdiction. *Reifer*, 751 F.3d at 144 ("[T]he existence or non-existence of pending parallel state proceedings is but one factor for a district court to consider."). All the same, the lack of a parallel state proceeding "militates significantly in favor of exercising jurisdiction." *Id.* So, while this is not a case where Plaintiff must rebut a presumption, after weighing all the relevant factors, including the lack of a parallel proceeding, the Court agrees with Defendant that it should retain jurisdiction and deny Plaintiff's Motion.

[2] The Court only needs to analyze the *Reifer* factors "to the extent they are relevant." 751 F.3d at 146. Because of the parties' apparent agreement that all the factors besides the third and fifth are neutral, only the third and fifth factors are relevant to the Court's analysis. Thus, the Court limits its discussion accordingly.

*DiAnioa's Eatery, LLC v. Motorists Mut. Ins. Co.*, 10 F.4th 192, 196–97 (3d Cir. 2021), the Court denies the Motion.

### A. The Third *Reifer* Factor: Public Interest in Settlement of the Uncertainty of Obligation

The Court turns first to the third *Reifer* factor: "the public interest in settlement of the uncertainty of obligation." 751 F.3d at 146. Generally, "there is no federal interest involved in cases concerning purely questions of state law." *Mattdogg*, 2020 WL 6111038, at *4 (quotation and alterations omitted). Indeed, where removed cases turn on questions of state law that are "uncertain or undetermined," district courts should be "reluctant" to exercise discretionary jurisdiction under the Declaratory Judgment Act. *DiAnioa's*, 10 F.4th at 207. But where a case merely presents a new situation in which to apply well-settled legal principles, federal courts remain "perfectly capable" of adjudicating those issues. *Id.* at 209 (quotation omitted). To think otherwise would be to undermine "the policy and purpose of diversity jurisdiction" as a whole. *Id.* at 207.

This is not a case where reluctance is warranted. While the interpretation of the ICD Term in Plaintiff's Policy certainly implicates important issues of public policy in New Jersey and no New Jersey court may have yet addressed this *precise* issue, this Court remains well-equipped to answer questions of contract interpretation. *Id.* at 210 ("An insurance policy is a contract interpreted by courts and sister-state courts and federal courts are equally capable of applying state contract law." (internal citation and quotation omitted)). Indeed, this Court has retained jurisdiction in declaratory judgment actions in which it had to interpret New Jersey insurance law in the context of this pandemic. *See, e.g.*, *Tumi, Inc. v. Factory Mut. Ins. Co.*, No. 21-02752, 2021 WL 4170051 (D.N.J. Sept. 14, 2021) (applying *DiAnioa's* and denying a motion to remand insurance coverage claims). Plaintiff has not identified anything that distinguishes the issues in this case as truly novel,

aside from the fact that no New Jersey court has interpreted this particular ICD Term before. (Pla.'s Reply, ECF No. 30 at 9–10). But the Third Circuit was clear in *DiAnioa's* that simply involving issues related to the pandemic is not a sufficient reason for a district court to decline jurisdiction. *Count Basie Theatre, Inc. v. Zurich Am. Ins. Co.*, No. 21-00615, 2021 WL 3732903, at *11 (D.N.J. Aug. 24, 2021) (applying *DiAnioa's* and denying a motion to remand). And since that decision, this Court on multiple occasions, including *Tumi* and *Count Basie Theatre*, has denied motions to remand in cases with similar circumstances.

> As this Court explained in *Tumi*,
>
> It is true, of course, that the COVID-19 pandemic is unprecedented. Still, as the Third Circuit has stated, that does not mean that the relevant issues of insurance law are so unsettled that a federal court should defer. Any court deciding this case will be applying familiar principles of insurance law to the language of the insurance policy at issue. The issues at the heart of this lawsuit are whether losses related to the COVID-19 pandemic and related government orders caused physical loss or damage to plaintiffs' business and whether plaintiffs' losses were caused by the actual not suspected presence of a communicable disease, as required by plaintiffs' Communicable Disease Response policy. If it takes jurisdiction of this case, this court will be able to decide these interpretive issues using well-established principles of New Jersey law regarding construction of insurance contracts.
>
> Federal courts are, of course, perfectly capable of applying state law. What is more, failure to remand would not impair the development of the law in the state courts. In declining to remand a similar insurance dispute earlier this year, Judge Wolfson observed that New Jersey State Courts have begun to rule on these matters, providing important guidance to the federal courts. . . . [T]his court is capable of determining the underlying merits of plaintiffs' claims.

2021 WL 4170051, at *3–4 (internal quotations, citations, and footnotes omitted). In short, the arguments made by Plaintiff in this case have already been rejected by the Third Circuit and, thereafter, by this Court. The Court will be able to apply its traditional tools of contract interpretation to the ICD Term and finds that the third *Reifer* factor weighs in favor of its retaining jurisdiction to do so.

9

### B. The Fifth *Reifer* Factor: Restraint When the Same Issues Are Pending in State Court

Next, the Court addresses the fifth *Reifer* factor: federal courts' "general policy of restraint when the same issues are pending in a state court." 751 F.3d at 146. As the Third Circuit recently clarified in *DiAnoia's*, this factor refers to situations in which "the 'same issues' are pending in state court between the same parties, not when the 'same issues' are merely the same legal questions pending in any state proceeding." 10 F.4th 192 at 206. Still, the court went on, "[b]ecause the *Reifer* factors are non-exhaustive, a district court may still consider, when relevant, whether the same legal question at issue in a declaratory judgment action is at issue in state court proceedings between different parties." *Id.* at 207. But here, the parties appear to agree that there is no parallel state proceeding in which a state court is grappling with the same legal dispute between them, and Plaintiff has identified no proceeding between different parties that so closely resembles this one that this Court's abstention is warranted. (Pla.'s Reply, ECF No. 30 at 11–12). Without one, the Court sees no reason to decline jurisdiction in this case and finds that the fifth *Reifer* factor weighs against remand.

*****

Weighing the two relevant *Reifer* factors and recalling that "the absence of pending parallel state proceedings militates significantly in favor of exercising jurisdiction," *Reifer*, 751 F.3d at 144, the Court concludes in its discretion that retaining jurisdiction is appropriate in this case.

### CONCLUSION

For the foregoing reasons, the Court **DENIES** Plaintiff's Motion to Remand. (ECF No. 11). An appropriate Order accompanies this Opinion.

 */s/ Christine P. O'Hearn*
**CHRISTINE P. O'HEARN**
**United States District Judge**